And good morning, Ms. Bergman. Good morning, Your Honor. May it please the Court, Assistant Federal Public Defender Janice Bergman on behalf of the appellant Winston Calder. When the State Appellate Court reversed Mr. Calder's conviction and remanded his case for a retrial, it expressly held that his confession was not voluntary and the product of improper and coercive police conduct. That holding was law of the case on retrial. Nonetheless, when on retrial the prosecutor used that confession to impeach Mr. Calder's testimony, his trial counsel did not object to the statement as involuntary nor request a hearing on voluntariness. That was deficient performance under Strickland. Counsel's actions also prejudiced Mr. Calder. Had counsel objected, the trial court would have been required to hold a hearing under state law and that at that hearing the appellate court's holding that the confession was involuntary would have prohibited its use for purposes of impeachment. What I am struggling with here is that Judge Altman, the district court on de novo review, disagreed with the Florida 4th DCA and determined that based on a totality of the circumstances, the incriminating statement was voluntary. Is that is that right? You know, Your Honor, I disagree with your reading of Judge Altman's opinion. There he stated that counsel could not have been futile for bringing a frivolous motion because the state trial court on the motion for a new trial at the end of the second trial had stated that she felt that there was no coercion involved here. There was never any discussion of the 4th district's opinion because defense counsel never brought that to the court's attention, never objected and asked for a hearing on voluntariness at all. The trial court in this motion for new trial at which defense counsel wasn't arguing that the confession was involuntary but was instead arguing that it should not come in as substantive evidence, she basically made an off-the-cuff remark saying that the she thought that there was no evidence of coercion and Judge Altman relied upon that statement. He did not disagree in my understanding with the 4th DCA's opinion. He quoted it and cited from it. Assuming that I agree with you that if the Florida DCA determined that there was a Miranda violation and the statement was involuntarily made, then his rights, his constitutional rights were violated. Is that correct? Yes, correct. And that Judge Altman didn't make any determination as to voluntariness in his order? My understanding, your honor, was that he did not make an independent determination of voluntariness. That he understood that the state trial court judge had stated that she found that the confession was not coerced by police conduct and that had trial, therefore had trial counsel raise an objection regarding voluntariness, it would have been futile because the state trial court judge had made this determination. But neither the state trial court judge nor Judge Altman considered the fact that the 4th DCA's opinion was indeed law of the case under state law. And if it's law of the case, then the statement could not be used for impeachment purposes, which is how it was used. That's correct, your honor. And so that's clear from this record that the statement could not be used for impeachment purposes. So all defense attorney had to do was to call the attention of the court to the Florida DCA's opinion, which she did not do. That's correct, your honor. Had she done it, had she done it, then the statement could not have been used for impeachment purposes. That's your argument? That's correct, your honor. That the state trial court's determination that the statement was involuntary and coerced means it rises to the level of a due process violation and therefore could not have been used for purposes of impeachment at retrial. And I have a question about the state court case. If you read the opinion, I guess we call it called a one. Is that what we should call your honor? That's fine. All right. Called a one. There are two places where they say the statement was involuntary. But the fact of the matter, if a statement is obtained in violation of Miranda, it's involuntary. That's one type of involuntary. Is that not correct? Well, not necessarily. Let's just take hypothetically. I'm gonna come at this case. You have a Miranda violation. The whole basis of Miranda is he hasn't been advised his right and we typically in Miranda cases. So therefore, the statement was involuntarily given. He wasn't told that it could stop have a it's an involuntary statement. That's that's what makes it unconstitutional. Miranda is just a made up rule. The basis for Miranda is it's an involuntary statement, right? Well, yes, Miranda discusses voluntariness as well. But no, no. So when we when all the courts say Miranda violation, we then say the statement was involuntary and is suppressed. Isn't that how we approach? Forget about other types of involuntary, right? Miranda creates a presumption of involuntariness, right? That is irrebuttable in a case in chief, right? It is not irrebuttable for purposes of impeachment. And so it is only when the defense comes forward with actual evidence. I'm not into the impeachment part. I'm trying to get you to help me with the call to one case. Yes, because you're trying to say the call to one court said it was involuntary for other purposes. That is for impeachment. A Miranda statement, even if it's involuntary under Supreme Court precedent, it can't be used in the case in chief, but it can be used as impeachment, right? I think we may have been maybe just discussing voluntariness. My understanding is let's remove the violent. Let's remove the voluntary involuntary. If you have a Miranda violation, it can't be used, the statement can't be used, except it can be used for impeachment, correct? So long as the statement is voluntary. Okay, but you just said Miranda raises a presumption that it's involuntary. So when we have a Miranda violation, it's involuntary, right? No. There are cases, I mean Harris versus New York, which the state relies on, is one of those cases where the Miranda violation was, there was no allegation that it was involuntary or coerced, and in that circumstance the Supreme Court allowed it in for purposes of impeachment. Okay, let's go back. However, in other cases, Connolly versus Colorado, this court in Atkins versus Singletary, the court has equated involuntariness in the Miranda context with involuntariness in the due process context, and when a Miranda violation rises to the point where there's not just a presumption of involuntariness, but the statement is actually involuntary. I couldn't find anything in Call to One talking about this statement being involuntary in the due process context. It certainly says it's involuntary in the Miranda process. There's nothing in this Call to One opinion. I know you read the word involuntary there, but there's no reference to due process, correct? Is that correct? That is correct. Okay, the whole context of the statements in Call to One are about the Miranda violation. Do you agree with that? I actually disagree with that. Okay, we only have two pages where it's even talked about. No, I understand, Your Honor, but it's very brief. Yes, but there's nothing mentioned. The word due process is not mentioned, right? No, Your Honor, but the case relies on Colosso versus Estelle out of the Ninth Circuit. The entire discussion in that case was about due process involuntariness, and the court relies on that case and finds it very interesting. No, they do not rely on that case. They come and say we need not decide whether we should adopt the rule in that case by Judge Kaczynski. Y'all argue that in your brief nine ways to Sunday, but actually the reading of the case says we need not decide whether we want to rely on that case. No, they don't rely on Judge Kaczynski's concurrence. They rely on Judge Trott's majority opinion that discusses almost entirely Fifth Amendment due process. The other thing, too, is that's not mentioned anywhere in the, they don't mention Fifth Amendment. They don't mention anything about, I don't think saying they, Florida adopted that Ninth Circuit case. In Florida, Your Honor, the court, the Florida courts have always equated coercion and involuntariness with... We're talking about constitutional law. Yes, I understand. Federal constitutional law, not what the Florida courts do. Yes, Your Honor, but this court and the Supreme Court in Connolly v. Colorado... Let me try it another way. Don't we have a right on de novo review to say the Florida Supreme Court was improper or it was erroneous or whatever, I guess this is the DCA. We can look de novo at the federal constitutional violation, right? No, Your Honor, in this circumstance, I don't think that's correct. Why is that? Because this is an ineffective assistance of counsel claim. It's not a claim as to whether or not... I know, but we have to look at it. We have to look at whether it was correct in its determination. It's whether trial counsel should have brought the Fourth DCA opinion to the attention of the Supreme Court. But if the Fourth DCA opinion doesn't reach the issue and doesn't rule on the issue, then there's no ineffectiveness, correct? I know you say they did reach it, but there's no ineffectiveness if the Florida DCA didn't rule on the issue, right? If the Fourth DCA's opinion is read the way Your Honor is reading it, then you're right. There's no... No ineffectiveness. Okay, thank you. Let me ask you before you sit down. Let's assume that you're able to meet the first prong of Strickland. Tell me about the deficient performance prong now, because she's going to argue when she gets up here that there's no prejudice, because when you look at the record in this case, two witnesses, there were two eyewitnesses to the crime, right? There was two eyewitnesses who testified that, you know, he shot his girlfriend and it wasn't in self-defense. And so why isn't that overwhelming evidence of guilt, which would defeat the second prong of Strickland? Well, Your Honor, as the state also admits, I mean, this case was a creditability contest between the defendant and the state's two witnesses, only one of which actually was an eyewitness to the shooting. The other witness didn't see the actual shooting take place. Was that Michael Green? Michael was the eyewitness to the actual shooting. He was the brother of the victim. And not only that, but the state witnesses' testimonies also, their testimony, also diverged in places as well. Patrick Johnson didn't witness the shooting? Patrick Johnson was there, but he didn't witness the actual, the defendant actually pulled the trigger. But what did he witness? He was behind the defendant when the interaction was happening around this doorway between the defendant and the victim and her brother. You say he didn't witness, pull the trigger. Did he witness him have a gun? Yes, he witnessed him. Well, no, he witnessed him pull something out of his pocket. The other thing too... Before you move on, I would like you to help me understand how we are supposed to review this case, this 2254 coming from the state. Are we reviewing the determination de novo? Or are we reviewing the determination de facto? Are we reviewing this through the lens of a DEPA, contrary to or an unreasonable application of Supreme Court law? Your Honor, the court reviews this de novo, and Judge Altman found that... I know Altman reviewed it de novo, but I guess the thrust of my question is, was that not a mistake? Shouldn't this case be reviewed through the prism of a DEPA? The reason I ask the question is, the collateral court here, doesn't write an opinion, but simply says, denied based on the briefing of the Attorney General. That's correct. Then it goes up to the 4th DCA for the second time. They affirm without opinion. Correct, Your Honor. Wasn't there an alternate ground offered by the prosecutor, by the Attorney General, saying in substance, even assuming archiwendo, that you're right on the first prong of Strickland and that there was deficient performance, you can't show prejudice in the instant case because of the compelling nature of the evidence? And if the answer to that is yes, aren't we to review the State Court opinion through the prism of a DEPA deference? If the State Attorney General had not mentioned it in his brief, then I think Judge Altman would clearly correct in reviewing it de novo. But if you have an explanation for why the State Court rejected the ineffectiveness claim, am I not required to give a DEPA deference? That doesn't mean they still could be wrong. But don't I have to defer to that determination if it's not an unreasonable application of or contrary to controlling Supreme Court law? That would be true, Your Honor, if the State Court had adjudicated the actual claim that Mr. Calder had presented to it. But during the course of the briefing, the State had recast that claim from a claim of ineffective assistance of trial counsel to a claim of ineffective assistance of appellate counsel. All of that's true, and that's going to the first prong. Just bear with me one second. Let me read to you what the Attorney General wrote. The State's response to the defendant's motion for post-conviction relief submitted to the collateral court judge. Lastly, they write, the defendant is unable to demonstrate prejudice to the extent that it rendered the verdict unreliable. In the instant case, there was strong evidence proving the defendant committed the crimes charged in the indictment, including testimony of the victim's brother, who was an eyewitness to the crime, see Exhibit F, blah, blah, blah, and the defendant was in possession of the murder weapon at the time of his arrest. Accordingly, there is no reasonable probability of a different outcome in this case. They were making an alternative argument on the second prong of Strickland. Am I not obliged to review the State court decision through the prism of deference? Your Honor, I disagree. 2254D expressly states that a court cannot grant habeas relief with respect to any claim adjudicated on the merits in the State court proceeding. It's not a portion of a claim. The claim that was raised and that the State responded to and recast in the State post-conviction proceedings was a claim of ineffective assistance of appellate counsel. The deficient performance and prejudice prongs in that circumstance are very different from a claim of... I think that's right. Nevertheless, you have to show ineffectiveness, whether it's appellate or trial, and two, you have to show prejudice. I agree, Your Honor, but the statute asks, did the State court adjudicate the claim on the merits? In Brewster v. Herzl, this court reviewed a claim de novo because the State failed to rule on the actual claim that Brewster raised. It's a very similar circumstance to here. So is it your view, cutting to the chase, that the State court did not review the prejudice prong here and just went off on ineffectiveness? Your Honor, I don't know exactly what the State court did. It's not clear they did write an opinion. Isn't the best argument that the Florida 4th DCA in Calder, too, it was just a per curiam affirmed decision, wasn't it? Yes, Your Honor, and you look through that decision to the decision of the post-conviction court. I mean, there was nothing in the opinion about the argument made by the State. That's correct, Your Honor. So we don't know what basis there was. What didn't the State trial court judge tell us? Denied for the reasons expressed in the Attorney General's brief. And didn't the Attorney General's brief offer multiple reasons and wasn't one of those reasons the propositions that there was no prejudice in the case? Yes, Your Honor. And had the claim been one of ineffective assistance of trial counsel, then we would be here under a different standard. But the claim was one of ineffective assistance of appellate counsel and the standard for prejudice for that is whether the issue would have been successful on appeal. It is not one of prejudice in the context of the trial. And so I think the standard is being very different and therefore renders the claims very different. Had this claim been raised as an ineffective assistance of for some other reason, this court would find it unexhausted and not presented. ADPO requires that the State have adjudicated exactly the same claim that was expressed. I've gotten totally confused about what was raised before the 3.850 court. That's what we're talking about. Mr. Calder raised a claim of ineffective assistance of trial counsel. Okay, all right. Wait a minute. I just want to know what we're talking about in the per curiam opinion and the trial court opinion is the 3.850 court, right? Yes, Your Honor. All right. I'm not trying to have it one way or the other. I just want to make sure I've got what you're saying. In the 3.850 court, it was pro se and he raised ineffective assistance of trial counsel. Correct, Your Honor. Did he raise ineffective assistance of appellate counsel? He raised that in a prior proceeding, Your Honor, in a State habeas corpus petition. Okay, so that was... Which is the vehicle that you do that, you raise that type of claim in Florida. Okay, so the trial ineffectiveness was one, was over in the... It was in the 3.850. It was in the post-condition proceeding. And the appellate effectiveness was in the habeas. That's correct, Your Honor, which is actually presented to the State appellate court in Florida. And the one we're talking about where we had a summary affirmance and you do look through to what the trial court did, that was in the 3.850? Correct, Your Honor. Okay, so what we're here about is the 3.850, is that correct? Correct, Your Honor. And when the State responded to that claim in the 3.850 proceeding, they stated this claim was already raised previously in the State habeas corpus proceeding where the ineffective assistance of appellate counsel claim had been raised. So the State's response... So you're saying they weren't addressing the merits. They were just saying it's been raised before. Yes, Your Honor. Okay, all of this deals with whether we have a deeper deference. I thought your position was even under DeNovo review, it was the law of the case. Oh, that's correct, Your Honor. This goes to this court's review of the issue. Yes, Your Honor. Your briefing to us was we did, like Judge Altman, we did DeNovo review because of various reasons. Is that what you're arguing? Yes, Your Honor. This court's review of the ineffective assistance of trial counsel claim is DeNovo. But this court is bound, when the court reviews a claim of ineffective assistance, it has to do it, determine deficient performance from the position of counsel operating at the time. And whether reasonable counsel in that lawyer's position, whether those actions were reasonable or not. Tell me what is wrong in Judge Altman's order. Because he said, if you go back and look at the state court, really the ruling was just on involuntariness in the Miranda context. He viewed the due process argument as distinct. Right? Yes, that's true, Your Honor. Okay, so he said, I see you're only, I'm only bound by or only looking at the ineffectiveness. Ruling from call to one, all that's about is Miranda. But that's a separate issue than whether there's involuntary confession or statement. For other reasons like coercion, pressure, being in a room for too long, no food, those types of things. And he said he denied that claim based on the state court finding there had been no coercion. Right? But he looked at them as two separate claims. Well, he, what he said was that the state's response to Mr. Calder's petition in federal court. Right. Construed it as raising, as Mr. Calder raising only a Miranda claim. And Judge Altman said, no, Mr. Calder's actual claim. Right. That his statement was involuntary and should not have been used for impeachment purposes. And so what Judge Altman was doing was clarifying that the claim that Mr. Calder raised didn't just go. All right. Whether, you know, whether it was improper. Two last questions to make sure I understand your position. We're reviewing Judge Altman's decision, right? Yes, Your Honor. All right. And you want us to do de novo review to it? Yes, Your Honor. Okay. And what is the error that he made? The error that he made, Your Honor, was that when he determined that trial counsel, defense counsel's performance was not deficient. He said it was because had she raised a motion regarding, raised an objection regarding voluntariness, the state trial court judge would have denied it because in the motion for new trial after the second trial, that's basically what the trial court said. She made an offhanded comment about not finding any coercion here. Well, he didn't call it an offhanded comment. Well, no, he didn't. He calls it a fact find. Okay. Whatever you want to call it, that's what he relied on. But at the same time, he didn't, neither he nor trial counsel seemed to understand the importance of the fourth DCA's decision that the confession, in fact, was not voluntary. I mean, he said Calder comes forward with no evidence of involuntariness. No, he didn't acknowledge Calder is doing that because he says they're two separate issues. I mean, he read Calder differently. He wasn't oblivious to Calder. He cited it. Yes, Your Honor. Okay. Thank you very much. I think you've reserved your full five minutes, and you've been really on answering our questions. Thank you. Thank you. Good morning. May it please the Court. Good morning. Heidi Bettendorf on behalf of the Department of Corrections. Although this is not where I was going to begin my argument, I'd like to begin in consideration of the Court's questions to my opponent with a brief overview of what happened in the 3850 proceeding below. In the 3850, the defendant specifically raised the following claim. At no time prior to the prosecution using the January 21, 2008 statement against the defendant, did counsel request a hearing outside the presence of the jury on the issue of the voluntariness of the defendant's January 21, 2008 statements. That is the issue that the defendant presented to the 3850 Court. That is the issue that Judge Altman dealt with. Unfortunately, the State Attorney, when responding to that issue, recast the defendant's claim as one of substantive law and stated that counsel's performance could not have been considered to be deficient because the statement was usable for impeachment under Harris v. New York. The State Attorney did not ever... And that's clearly correct, right? That is clearly a correct statement of the law. The State Attorney, however, never dealt with the specific allegation that trial counsel was deficient for failing to request a hearing on the issue of voluntariness. That failure continued when the trial court adopted the State's response in its order and affirmed for the reasons contained in the State's response. And I'd just like to back up for a second. Also, in response to Mr. Calder's claim down at the 3850 level, the State dealt with both prongs of Strickland. For the deficient performance prong, it recast the claim as I just stated to you. It also dealt with prejudice, and it completely covered the prejudice argument raised by the defendant, which was that it was prejudicial to him because the State relied upon his statement as substantive evidence in his closing argument. Again, that was relied upon by the trial court in affirming the 3850. The 4th DCA did a per curiam affirmance. When Mr. Calder raised the same claim in federal court and the State or the Department of Corrections responded, the Department of Corrections made the same error that the State Attorney did in the State court, which was recasting Mr. Calder's claim as stating that trial counsel was ineffective for failing to object but not dealing with the very specific issue of there had to have been a hearing on the voluntariness of his statement had trial counsel lodged the proper objection. Additionally, in the response to the 2254 petition, the Department of Corrections also addressed the prejudice prong. Judge Altman, in his order, found that the State had improperly recast the claim and he addressed the deficient performance prong. However, with regard to the prejudice prong, Judge Altman, at document entry 15 on page 19 in footnote 3, noted the State court considered and rejected this part of ground too. We therefore, we being Judge Altman, therefore review this part of the claim under AEDPA's rigorous standard of review. So it is the Department of Corrections contention that with regard to prejudice, the standard of review is the doubly deferential standard contained in 2254 D1 and also under the Strickland standard. Let me tell you why I think there's prejudice. Why I think there's prejudice. Because even though you have these two witnesses, if the jury bought his defense that this, I shot this lady in self-defense, they might have found him guilty of second-degree murder rather than first-degree murder. So even without the confession, it would not have mattered to the jury. Well, Your Honor, in addition to the statements of the two witnesses, one of whom was an eyewitness and one of whom was standing behind the defendant when he shot the gun, there was also physical evidence that contradicted what the defendant took the stand and testified to in his own defense. Yeah, but that confession is really is what killed him in this case. The confession was only used for impeachment. It was not used for substantive evidence. But it shouldn't have been used for impeachment. That's pretty clear. It should not have been used for impeachment. And when you look at the closing argument, the prosecutor just, I mean, the prosecutor just focused tremendously on the confession. I would respectfully disagree with Your Honor that the statement should not have been used for impeachment. The statement was permissible to be used as impeachment under Harris v. New York. And so, therefore, the statement— That would only be true if the statement was not otherwise sufficiently coercive to implicate the due process clause, right? That is correct, Your Honor. So let me ask you about that. Let's go back to Calder 1 and the Fourth DCA opinion in Calder 1. There seems to be a difference of opinion about what the Fourth DCA decided. I want to read you from the language in the Fourth DCA opinion. And I'd like you to tell me whether or not the DCA didn't go beyond simply saying there was a Miranda violation and also say that there was a violation of due process, although they don't use the words due process. They write, for resolving the present case, it is enough to say that the substance of the entire transaction confirmed that Calder did not voluntarily initiate the further conversation with police. That obviously is going to Miranda. And then they go on to say, and that his action in requesting the detective was merely the delayed product of the coercive police conduct. And then they cite Collazo, the Ninth Circuit case at 940 F2D 419 to 424, where the Ninth Circuit clearly goes beyond a Miranda violation and suggests that there was a due process violation as well. Whether the Fourth DCA was right or wrong, wouldn't it be fair to say the Fourth DCA made essentially two determinations of law? One, there was a violation of Miranda. Two, the statement was otherwise coercive and inadmissible because it was coercive. And if that's the case, then the statement could not be used even for impeachment, right? If Your Honor's interpretation of the Fourth DCA's opinion were correct, I would agree with you, but I would have to disagree that that's the proper interpretation. Tell me why, from the language that I read, where the DCA specifically says that the statement was the delayed product of coercive police conduct. Not a function of a violation of Miranda, which was in the first clause in what they said. Aren't they saying more than that, particularly when they cite to Collazo? I don't agree with you because I believe that Judge Taylor in Calder 1 was merely referring to coercion in the context of overriding the defendant's request for an attorney. Not coercion with regard to the giving of any of his statement. And it does not rise to the level, and nothing said in the Fourth DCA's opinion indicates that the police officer's behavior rises to the level of a Fifth Amendment due process violation. And I would direct this court's attention to its prior opinion in United States v. Mendoza-Cecilia, which explains the difference between coercion in the context of a Miranda violation and then coercion in the context of a due process violation. It is only in the context of a due process violation where the state would be prohibited from using the statement for any purpose at all. In the case of a Miranda violation, as we have in this case, and the Fourth DCA didn't really go any further than the Miranda violation, we do not have a Fifth Amendment due process analysis that requires that statement to be suppressed for all purposes. And so, therefore, the state properly used it as impeachment material. I can discuss— Let me ask the slightly different question. Just assume for the purposes of my question that Ms. Bergman is correct in reading the Fourth DCA opinion, and the district judge was wrong. That is to say, the Fourth DCA actually went to coercion, which is the stuff of due process. They still have to show two things on the Strickland, that there was prejudice beyond ineffectiveness of counsel. That is to say, the error here in impeaching him with a statement that was the result of coercive conduct, even if notwithstanding having done that, the result would have been the same absent doing that. That is to say, there was no prejudice, there was no reasonable probability the result would be different. Am I reviewing this prejudice issue de novo or through the prism of adepa deference? You are reviewing the prejudice prong through the prism of adepa deference. And, unfortunately, I believe there is the title statement to the prejudice argument in the Department of Corrections' brief, states that even under de novo review, the district court was correct in its ruling, but previously in the Department of Corrections' brief, it notes that the standard of review is the deferential standard of adepa. Help me understand. What did the district judge do here with regard to prejudice? Did he review the whole Strickland claim de novo, or did he defer under adepa to the prejudice determination, assuming there was a prejudice determination made by the 3.850 court? According to the footnote in Judge Altman's opinion. That's the one on page 19. I'm sorry. Yes, page 19 of document entry number 15. He states that it is subject to the deferential standard of the adepa. Ms. Bergman says the problem with approaching the case that way is it's confusing the claim for ineffectiveness of appellate counsel, which is really what's at issue here, with the claim of ineffectiveness of trial counsel, if I heard her right. I have to concede to this court that I don't understand the argument regarding appellate counsel. That's never been before any court regarding this particular claim that we're dealing with on the 3.850. And so I don't understand where her statements regarding appellate counsel come from. So I'm not prepared to respond to that, Your Honor, because I don't see where it's discussed anywhere in the 3850 record. So if I understand the heart of your argument, one, petitioner's wrong on ineffectiveness, but in any event, even if he were correct, we must use the prism of deference, and there's nothing in the determination that was made here that was an unreasonable application of state law, of federal law. I think I might not be understanding you correctly. What the state's argument is is the deficient performance prong can be subject to the de novo standard of review because it was not addressed by the state or the court. Right. I'm asking about the prejudice prong, the second prong of Strickland. You say we should review that through a depa deference. Yes, sir. Tell me why, if we review it through a depa deference, you are correct here, which is another way of saying could a state court ruling finding no prejudice so lacking in justification that there was an error well understood and comprehended in existing law. Well, I would draw your attention to the trial court record in this case of the second trial, which is why we're here. First of all, the defendant's statement was only used for impeachment. It was not used as substantive evidence, as he has claimed repeatedly, and that claim has repeatedly been denied by all courts that have dealt with it. In addition, you have the testimony of the two eyewitnesses. One of them is an eyewitness, and he claims that not only did the defendant pull the trigger once, he reached around with his free hand, he turned the safety off on the gun, and he pulled the trigger a second time. That's Michael Green. He was 15 years old at the time, and he was the victim's brother. You have another witness, Patrick Johnson, that was standing behind the defendant as the defendant was trying to push his way into the apartment. While he did not see the gun go off, he heard the gunshot. In addition to that, you have the physical evidence, which includes testimony from the responding officers as well as testimony from the medical examiner that disproves the defendant's statement of how this happened and what happened. The bullet wound was in the victim's right front forehead, and that coincides with Michael Green's testimony that she had her back to the door and she had fallen to the ground. The defendant said that she was pushing against the door and that he reached around and he blindly shot the gun, and if that were the case, then it would have entered the victim's left forehead, not her right front forehead. It was also at a downward trajectory. If she was pushing against the door, it would have been more of a parallel trajectory. Therefore, as I said, the state did not use the defendant's prior testimony for substantive evidence, and all of the evidence properly admitted at the trial undermined the defendant's statements when he testified. Therefore, even if trial counsel's performance had not been allegedly deficient, as he claims, this court can affirm on prejudice under the ADEPA standard. Basically, you're saying there was cumulative impeachment. This statement, even if it was impeachment, there was cumulative impeachment. Well, it just was not. It didn't comply with the rest of the physical evidence and the testimony at trial. But I think Judge Hall's point is that he was impeached on his testimony, his direct testimony altogether independent of the impeachment. Other witnesses impeached him because they were testifying different than what he was. He was impeached by contradictory testimony of other witnesses. Correct. My apologies. I misunderstood. I may not have stated it. Can we go back to Judge Altman's order, and is there anything the state thinks wrong in the order or could have been done better or should have been done better? Is there any error in the order from the state's perspective? You're right, and I had missed the footnote about ADEPA. I thought the whole thing was de novo, but I actually don't see where he makes a finding on prejudice in the footnote. He just says that will be reviewed under ADEPA. I'm not sure he goes so far and says, and I don't find any prejudice, because he says the claim lacks merit. There's no ineffective assistance because it was properly used for impeachment. The defendant had claimed as far as prejudice that it was prejudicial to him to allow the statement to be used for impeachment because the state used the statement as substantive evidence in his closing argument. And at the top of page 19, Judge Altman addresses that claim, but he doesn't necessarily state that he's addressing it under Strickland prejudice. But that was the defendant's claim in support of his Strickland prejudice argument. Yeah, he's saying he really didn't use it as substantive evidence. So isn't it? He was just using it as impeachment evidence. So he's saying he just denies the ground. He does, but the defendant's argument regarding prejudice was that the state relied on the statement. As substantive evidence. And Judge Altman rejects that argument. Right. So therefore, the implication being. I want to go back to Judge Hull's question. In your view, does the district court judge rule on prejudice? In my view, he rules on prejudice. And he rules on prejudice through the prism of adepa deference. According to his footnote, that is correct. Let me ask a question this way, just going back again to what the holding is in the Fourth DCA opinion. If the Fourth DCA was simply going off on a Miranda violation, why would they use the word coercive police conduct and follow it with a reference to the Ninth Circuit opinion, which specifically addressed coercion, going far beyond the question of a Miranda violation? I cannot say why Judge Taylor made that reference. What I can say is that it was a whether the defendant re-initiated contact was a totality of the circumstances analysis. And that is where it's referenced in the Fourth DCA's opinion. I'd also like to point out that after what we are referring to as Calder 1, to buy into my opponent's argument, the Fourth DCA itself would have had to ignore its own prior ruling when affirming the ineffective assistance of appellate counsel claim and subsequently affirming the 3.850 claim. It would have had to ignore if what my opponent is arguing is correct. It would have had to have ignored its prior ruling finding the claim coercive for all purposes and therefore disallowed for impeachment. So you're saying the second in the second round, the fact that the DCA did something else means they didn't rule on the issue in the first one. No, what I'm saying is that we would have to all agree that the Fourth DCA ignored a prior ruling that my opponent argues is law of the case. The statement was coerced and inadmissible for all purposes. The subsequent rulings by the Fourth DCA in this case would have had to ignored all of its prior language in Calder 1. And it doesn't say in Calder 1 that it's inadmissible for any purposes. I mean, it doesn't even deal with all that. It doesn't deal with impeachment. It doesn't deal with the underlying issue anyway. No, it never addresses a Fifth Amendment due process. Right, right. And when you say in round two, of course in round two we have just the, I guess it's the 3.850 court say for the reasons in the government's brief. Is that right? Yes, but also attached to the government's response was a copy of the Fourth DCA's opinion. Okay. Is it also true that in Calder 2 the only issue is whether there was ineffective assistance of appellate counsel rather than trial counsel? I'm sorry. Calder 2 was an, or if you're referring to the ineffective assistance of appellate counsel claim, that was made directly to the Fourth DCA and it was denied by order. There was no opinion there. The 3.850 claim was denied by opinion in the Fourth DCA and it was a per curiam affirmance. And you're saying that. And the issue was whether there was ineffective assistance of appellate counsel. Not in the, no, not in the Fourth DCA's opinion which I presume you're referring to as Calder 2. There is no discussion of appellate counsel. Today is the first time that it's ever been brought up by my opponent in the context of this 3.850 proceeding. It's only because the ineffective assistance claim is that when he was doing the second trial he should have objected to the confession, the statement being used for any purpose. Are you referring to appellate counsel? The whole claim is that ineffective assistance of trial counsel in the second trial. Correct. That's what we're here about. Correct, for failing to request a hearing on the voluntariness of the statement. On the voluntariness. Okay, so we're only talking about trial counsel. We're not talking about appellate counsel. Correct. And we're here on a 2254 that's seeking to challenge the 3.850 court ruling or the habeas court ruling. The appeal is of Judge Altman's order. No, no, I'm talking about in the 2255, excuse me, in the 2254, the 2254 seeks to review of the state court ruling in what? In the 3.850 proceeding. That's what I'm trying to say. So the whole thing is ineffective assistance of trial counsel from start to finish. That is correct. Okay, so, all right, and that's what the 3.850 was about, okay? And so what we do is we look at the per curiam. We don't have any reasons. You agree we look through to the 3.850 trial order, right? I agree. And then we look through to for the reasons stated in the government's brief. So we look through to the reasons in the government's brief. I agree. And what is the best reason articulated in the government's brief that you argue the state 3.850 courts adopted? The best argument is the prejudice prong. Okay. Which was dealt extensively. So it's the language that I read to you originally in your brief. The defendant is unable to demonstrate prejudice for the following reasons. That is correct. So that's the holding of the 3.850 court that we're bound by. And we're directed to look at through the prism of adepa deference. That's your view. Yes, sir. And did the court also, for the reasons stated in the government's brief, did the government's brief have any merit reasons? Regarding whether trial counsel was ineffective for failing to request the hearing. Yes. The state did not address that specific claim. Because they recast it. I get it. So they improperly recast it. That's correct. Only on the deficient performance prong. I have one final question for you, counsel. Earlier in your argument, you said that we review the Strickland claims through the prism of double deference. And you said we review through double deference both the claim on ineffectiveness and on prejudice. Didn't I hear you right when you said that? Or are we only reviewing through the prism of double deference the question of ineffectiveness, not prejudice? Our argument is that the double deference applies to the prejudice prong of Strickland. Okay. Let me stop you at that point. We have said more than once that when we're looking at a Strickland claim of ineffectiveness and prejudice, and the petitioner must show both things, we review ineffectiveness through double deference because Strickland itself defers to the determination made by the counsel, and we superimpose on top of that the deference found in ADEPA. Hence, double deference. That's the holding of the Supreme Court in Harrington. When we get to the question of prejudice, however, the deference comes from the statute itself, from ADEPA. There's no other deference that I can find on prejudice. We still have to defer, but it isn't double deference. Unless I've misunderstood this law, how do you get double deference on the prejudice prong? Your Honor, you may be correct. I'm going to – Oh, that's our law. Okay. I can assure you. If you are correct, the Department of Corrections will still win on the prejudice prong even if you – No, even if you were to take ADEPA deference away and you were to impose – No, no, no. What I'm taking away is the double deference. There's no Strickland deference on prejudice. The only deference in here is in the statute, if at all. That's all I was asking. Anything further, we've gone way over time. No, I have greatly exceeded my time, and if there are no other questions, the – I'm sorry, but I have one last thing. All right, so I got it now, the 3.850 court, because of the casting, there was a claim of ineffective assistance on the merits of failure to request a hearing. But you're saying on the voluntariness. But the state then recast it in the response. So we look at the 3.850 when he says, for the grounds stated in the government's brief, there's no ground on the merits. So would the fair reading be that we don't have a ruling by – this is just a question. So we don't have a ruling by the 3.850 court on the merits of the ineffective assistance claim? You don't have a ruling on the merits of the deficient performance on – Yeah, and so then – so there's nothing that was affirmed because there was never – we're looking through. We don't have a ruling, but there's no doubt he exhausted the claim. He brought it, but the state court didn't really rule on it. So maybe that's why Judge Altman did it de novo. I don't know. I'll have to go back and look at his order. So Judge Altman did look at the merits of the claim de novo, right? Correct. Okay, so maybe if it wasn't ruled upon in the state court, it was still exhausted. You just had a failure of the 3.850 court to do a definitive ruling. That is correct. They just went on prejudice, and they didn't do merits. Yes, and as far as – I'm trying to see how we tee it up. Just so that I am clear on what you are saying, there was no merits ruling on ineffectiveness prong of Strickland. There was a determination on the merits about prejudice. That is what I – yes. And that's because you'd look through the trial court's ruling saying I'm relying on the brief of the government, and the government's brief went off on prejudice and laid out why, in its view, there was no prejudice. That is correct, and that is also the position that the Department of Corrections has always taken regarding the look-through doctrine where a trial court has stated that it relies on the state's response. One last thing before I sit down. We agree that Judge Altman correctly determined deficient performance, but we believe that our stronger argument is on prejudice, and this court doesn't even need to deal with deficient performance. And for the rest of my argument, I rely on our briefs. Thanks very much. Ms. Bergman, you've reserved your full five minutes. Thank you, Your Honor. I would like to go back to Judge Marcus's discussion of what type of review this court has and whether deference applies to the prejudice prong or not. I think some of the confusion in this case, and it is complicated procedurally, is I'm looking at Judge Altman's order and the footnote to which the court refers, footnote three on page 19. My understanding of Judge Altman's order, Your Honor, is that that footnote pertains only to, I guess I should explain it, it appears that Mr. Calder raised two arguments in ground two in his federal petition. This footnote pertains only to the second part, Mr. Calder's related argument, it starts at the top of that page, about how his argument was that the prosecutor should not have been allowed to use his statement as substantive evidence. That was kind of the second half of ground two that had nothing to do with whether or not the trial counsel should have raised an objection regarding voluntariness. It was as to that related argument that Mr. Calder found, I'm sorry, Mr. Calder, that Judge Altman found that the state trial court had made a determination regarding prejudice and provided deference as to that portion of Mr. Calder's federal claim. But the prejudice inquiry with respect to that, whether or not the statement was prejudicial because it came in as substantive evidence, is utterly unrelated to the question of whether it was error to be admitted at all at trial because it was coercive and involuntary. And so I would argue that this court reviews the actual claim we're discussing, whether or not trial counsel erred in not objecting to the statement that this court's entire review of that claim is de novo both the deficient performance prong and the prejudice prong. I guess that's what I'm having trouble understanding. I understand the procedural difficulty because there was confusion. Yes, Your Honor. The problem that I have is this. You concede that we have to look through. The DCA opinion tells us nothing. It's just per curiam affirmance. Yes, Your Honor. Then we go to the 3.850 trial court ruling. The only thing the 3.850 trial court does is he rules, and he says, for the reasons stated in the government's brief. Yes, Your Honor. And if I could, the state— Just bear with me. Just bear with me. Okay, I'm sorry, Your Honor. And when you go to the reasons stated in the state's response to the defendant's motion for post-conviction relief, you have the paragraph that I read to you earlier. Lastly, the defendant is unable to demonstrate prejudice to the extent that it rendered the verdict unreliable. In the instant case, there was strong direct evidence proving the defendant committed the crimes charged in the indictment, including testimony of the victim's brother, who was an eyewitness to the crime, and the defendant was in possession of the murder weapon at the time of arrest. Accordingly, there is no reasonable probability of a different outcome in this case. That's going to prejudice. That lays out the rationale, and we're bound to say that's one of the reasons, looking through, that the 3.850 trial court denied the petition. If that's right, am I not obliged to look at that through the prism of adepa deference and ask whether that determination by the state court was contrary to or an unreasonable application of controlling federal law? Again, Your Honor, I believe that that whole prejudice analysis went to a separate portion of the claim, not the claim that Mr. Calder was raising here. I mean, I cite in my brief, my initial brief at page 18, that the state's response to the claim that Mr. Calder raised in his 3.850, the state's response, quote, defendant raised this very issue in an ineffective assistance of appellate counsel claim in case number 4D-17-13-29, which was the state habeas corpus petition in which Mr. Calder alleged a claim of ineffective assistance of appellate counsel. And the state says that claim was denied on July 10th. And so the state recast this claim as one of not only of an ineffective assistance of appellate counsel, but also one that the state court had already previously determined and rejected. And so the state, again, the response did not mention trial counsel's failure to request a hearing on voluntariness. And so, again, the state recast this claim not as one of ineffective assistance of trial counsel, but ineffective assistance of appellate counsel. And I would argue that any discussion, as Judge Altman found, regarding prejudice was with respect to the second part of the claim that had solely to do with whether it was error to admit the statement as substantive evidence, which actually didn't happen at all at the trial. So there was no need for the state court to determine whether or not there was prejudice. I'm looking at your brief. Yes, Your Honor. And I'm looking at the summary of the argument on pages 26 and 27. And you say the ineffectiveness of counsel, you say we review it de novo, and you say counsel's failure to object and request a hearing on the voluntariness created the prejudice. Counsel's failure to object and request the hearing allowed the state to use the statement repeatedly on cross-examination to impeach. Didn't this all go to the trial counsel's failure to object? Yes, Your Honor. Isn't that what this is about? Yes, Your Honor. Okay. I just wanted to be sure I had that right. Any other questions for Ms. Bergman? Anything further, Ms. Bergman? No, thank you. We thank you both for your efforts in this case. And we will proceed to the last case we have on this morning.